**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON**

| | | |
|---|---|---|
| ASHLEY ARTHUR, | ) | CASE NO. 1:21-CV-00659-JRA |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

I.  **Introduction**

Plaintiff, Ashley Arthur ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

II.  **Procedural History**

On December 10, 2014, Claimant filed an application for SSI, alleging a disability onset date of September 28, 2014. (ECF No. 11, PageID #: 465).[1] The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge

---

[1] Claimant had previously applied for SSI. The ALJ in this application did not adopt the prior ALJ's findings because Claimant provided new and material evidence. (ECF No. 11, PageID #: 108).

1

("ALJ"). (ECF No. 11, PageID #: 327). On August 11, 2020, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 11, PageID #: 142). On September 9, 2020, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 11, PageID #: 96). The ALJ's decision became final on January 25, 2021, when the Appeals Council declined further review. (ECF No. 11, PageID #: 81).

On March 24, 2021, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 13, 15). Claimant asserts the following assignments of error:

> (1) Did the Administrative Law Judge ("ALJ") commit reversible error by failing to recognize the frequency of the Plaintiff's headaches?
>
> (2) Did the ALJ commit reversible error by failing to include appropriate limitations pertaining to the Plaintiff's headaches in his RFC?

(ECF No. 13-1 at 1).

### III. Background[2]

#### A. Relevant Hearing Testimony

The ALJ summarized Claimant's relevant testimony from her hearing:

> [T]he claimant testified that she has migraines approximately two to three times per month, most of them lasting a few hours. She testified that she treats them with an injection or a pill. She testified that she sleeps for hours after the onset of a migraine and must be in the quiet with no light and no sound. The claimant testified that she also has pseudo tumor headaches that cause increased pressure in her skull. She testified that the symptoms feel like a migraine, but the migraine medications do not relieve them. She testified that these headaches are also associated with numbness in her fingers, hands and feet, a complete loss of peripheral vision, blurred front

---

[2] Because Claimant's appeal focuses on the ALJ's evaluation of her pseudotumor cerebri syndrome and migraine headaches, the Court's discussion of the medical evidence and testimony is limited to the same. (ECF No. 15-1 at 2).

> vision, and ultimately a complete loss of all vision. She testified that she has one of these headaches on average once per [week].[3] The undersigned notes that the claimant reported drowsiness, dizziness, and headache as side effects from her medications (Exhibit B11E/9: Claimant's Hearing Testimony). . . .
>
> Though she testified that she has been working since October 2019, she indicated that she has help from her coworkers and that she is still not able to work the way she used to in the past. As for chores and caring for her son, the claimant indicated that her mom helps her out a lot.

(ECF No. 11, PageID #: 108–09).

In relevant part, the Vocational Expert ("VE") testified that a hypothetical individual with Claimant's RFC who needed four additional fifteen-minute breaks in a day would not be performing competitive work. (ECF No. 11, PageID #: 162). The VE also stated that if the hypothetical individual was off task 20% of the day or absent two days a month, work would be precluded. (ECF No. 11, PageID #: 162–63). Finally, the VE testified that if the hypothetical individual either needed frequent supervision or to work in isolation, work would be precluded. (ECF No. 11, PageID #: 163).

**B.        Relevant Medical Evidence**

The ALJ also summarized Claimant's health records and symptoms:

> With regard to the claimant's migraines and pseudotumor cerebri syndrome, the claimant has been diagnosed with these conditions since the year 2000 (Exhibits B8F/22; B21F/20; B23F/5). Her treatment notes from the month of her alleged onset date in September 2014, explicitly state that her headaches were well controlled as long as she took her medication (Exhibit B21F/20). In April 2015, the claimant reported having more frequent headaches, blurred vision, and declined temporal vision (Exhibit B21F/24). Treating providers increased her medication dosage, which the claimant reported resulted in a slight improvement (Exhibit B21F/27-28). Moreover, in June 2015, it was noted that the claimant's migraines were "fairly effectively" treated with Diamox

---

[3] The ALJ incorrectly stated that the headaches occurred once a month.

3

(Exhibit B8F/22). Around that time, the claimant's pain management provider also stated that the claimant reported having no further headaches after discontinuing morphine for pain control (Exhibit B10F/12). A statement from the claimant, dated August 9, 2015, indicates that she felt her headaches were not 100 percent controlled although her medication decreased the length and sometimes the intensity of the symptoms (Exhibit B11F). In October 2015, the claimant consulted a neurologist for her headaches, who administered an injection in her neck (Exhibit B21F/41). At that time, her pseudotumor cerebri syndrome was considered to be worse (Exhibit B21F/40). Nonetheless, on physical examination, the claimant had normal cranial nerve functioning, normal gait, coordination, Romberg sign, and motor functioning. She had one plus reflexes throughout (Exhibit B21F/38-39). Moreover, in December 2015, the claimant reported that her headaches had improved and that she was having approximately two headaches per week. She reported that her headaches responded well to treatment, but usually took about four hours for the headache to resolve completely (Exhibit B21F/42). As the claimant reported difficulty concentrating on tasks due to her headaches, her treating provider prescribed Adderall (Exhibit B21F/45).

On follow-up in May 2016, the claimant reported that her headaches were less frequent, occurring two to three times per month. The claimant reported that her Adderall had helped and that she was functioning better. The claimant reported that she was able to "accomplish a lot of work at home and [] do what she could not do before" (Exhibit B21F/46). Treating providers added Furosemide and continued Diamox to continue to improve the claimant's headaches (Exhibit B21F/50). The claimant's headaches did not respond to the Furosemide (Exhibit B21F/50; B21F/54). This notwithstanding, treating providers stated that the claimant's pseudotumor cerebri and headaches were "fairly well controlled" (Exhibit B28F/1). Treating providers increased the Furosemide dosage in December 2016 (Exhibit B21F/57).

In February 2017, the claimant reported having headaches two to three times per month and she reported that the Adderall was no longer working (Exhibit B21F/59). Treating providers referred the claimant to an ophthalmologist due to the claimant's reports of declined vision (Exhibit B21F/71). However, on physical examination, the claimant continued to present as awake, alert and fully oriented with normal mental status examination findings. She had normal cranial nerve functioning with normal muscle bulk and tone, no signs of tremor or pronator drift, and five out of five strength in the upper and lower extremities bilaterally. The claimant

4

> had one plus reflexes, normal sensation, normal coordination, negative Romberg and normal gait (Exhibit B21F/17). Moreover, by June 2017, the claimant reported having migraines three to four times per month, but stated that she could abort the headaches usually in less than one hour, although she reported a headache for nine days in duration (Exhibit B30F/1; see also Exhibit B28F/5).
>
> In July 2017, the claimant consulted an ophthalmologist (Exhibit B23F). Dr. Katz noted that the claimant's vision was 20/25 in the right eye and 20/30 in the left eye, with correction (Exhibit B23F/2). Topamax was prescribed to the claimant and she was advised to return in six weeks (Exhibit B23F/5). In November 2017, it was noted that the claimant's migraines were "moderately controlled" with the Topamax, but she had to discontinue the medication because it caused kidney stones (Exhibit B33F/1). Her medication was then changed to Propranolol (Exhibit B33F/5). In January 2018, the claimant was noted to have 20/25 vision with correction in both eyes (Exhibits B38F/3; B50F). He noted that the claimant reported that her headaches were worse when she was up and around, but better when she was lying flat (Exhibit B38F/4). Propranolol was continued and the claimant's Diamox dosage was reduced (Exhibit B38F/5).
>
> Treatment notes from April 2018 indicate that the claimant had had three migraine headaches since her last visit, with associated photophobia, phonophobia, and sometimes nausea (Exhibit B40F/3). Her neurological examination was normal, however, including with good attention span and concentration, intact memory, and alert[]ness and orientation noted (Exhibit B40F/5).

(ECF No. 11, PageID #: 115–16).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2. The claimant has the following severe impairments: degenerative disc disease of the lumbar and thoracic spine, status post closed fracture of the right hip, osteoarthritis and tendinopathy of the left rotator cuff/shoulder, fibromyalgia, migraine headaches with pseudotumor cerebri syndrome, type 2 diabetes mellitus, peripheral neuropathy, history of deep vein thrombosis, morbid obesity, bipolar I disorder, obsessive compulsive disorder (OCD), depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder (PTSD) (20 CFR 416.920(c)).

5

> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally, ten pounds frequently. Stand and/or walk two hours out of an eight-hour day and sit six hours out of an eight-hour day. Foot control operation is limited to the frequent level. Sit/stand option must be allowed to change positions to sit or stretch for a minute or two after 60 minutes. Push or pull with the left is limited to the occasional level and also limited as per exertional weight limits. Never climbing ladders, ropes, or scaffolds. No kneeling, crouching, or crawling but occasional for stooping, balancing, climbing ramps or stairs. No commercial driving. Reaching overhead, forward, and laterally is limited to the frequent level on the left. No concentrated use of moving or hazardous or heavy machinery. No exposure to unprotected heights. Goal-based production work measured by end result and not pace work. No strict production demands or quotas or time pressures. Work is limited to simple, routine, repetitive one to three step tasks. Work in a low stress job, defined as only occasional changes in the work setting. No interaction with the public. Interaction with co-workers and supervisors occasional and superficial. Also, capable of work in solitary environments.

(ECF No. 11, PageID #: 103, 107).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

6

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C.     Discussion**

Claimant raises two issues on appeal. First, Claimant argues that the ALJ failed to recognize the frequency of her headaches, failing to properly apply SSR 16-3p—Evaluation of Symptoms in Disability Claims. Second, Claimant asserts that the ALJ failed to include appropriate limitations regarding her headaches.

**1.    The ALJ Properly Considered Claimant's Headaches under SSR 16-3p**

Claimant argues that the ALJ failed to properly recognize the frequency of her headaches, committing reversible error under SSR 16-3p. SSR 16-3p provides that when determining whether a claimant is disabled, the ALJ considers all the claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective evidence in the record. SSR 16-3P, 2017 WL 5180304, at *2. A claimant's subjective complaints "can support a claim for disability[] if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citations omitted). However, "if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304, at *8. The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

Claimant's argument centers around the fact that the ALJ incorrectly stated that "Claimant

8

testified she has headaches once per month, which is a significant improvement from the claimant's earlier reports of having [headaches] several times per week." (ECF No. 11, PageID #: 120). Claimant argues that she actually testified that she has headaches once per *week* and she asserts that this makes the ALJ's "analysis of the consistency of her reported symptoms . . . inherently unreliable." (ECF No. 13-1 at 12). While the ALJ did incorrectly state the frequency of Claimant's headaches, as the Commissioner correctly points out, this error will be considered harmless if "the ALJ would have arrived at the same disability determination regardless of any misinterpretation of the testimony." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 931 (6th Cir. 2007) (citations omitted0. The Court, therefore, must determine whether the ALJ would have arrived at the same conclusion had he correctly understood Claimant's testimony to be that she continued to have headaches once a week.

The Court concludes that the ALJ would have arrived at the same conclusion without the error. The ALJ considered Claimant's symptoms regarding her migraines and pseudotumor cerebri syndrome. Although he misstated that Claimant's frequency of headaches improved to once a month, the Court notes that his statement remains true: Claimant's headache frequency improved. Additionally, the ALJ relied on the fact that the objective medical evidence did not substantiate the severity of Claimant's symptoms. (ECF No. 11, PageID #: 119). In making this determination, the ALJ noted that there was no evidence of required emergency treatment or hospitalizations for her headache symptoms. (ECF No. 11, PageID #: 120). He also recognized that even when Claimant reported an increase in the frequency and intensity of her headaches, her treating providers continued to state that her conditions were "fairly effectively" controlled. (ECF No. 11, PageID #: 120). In addition, he reasoned that Claimant's neurological findings remained stable notwithstanding her reported symptoms and her ophthalmologist did not document any findings

9

consistent with lost or disrupted vision due to the migraines. (ECF No. 11, PageID #: 119). *See Minor v. Comm'r of Soc. Sec.*, No. 5:18 CV 2233, 2019 WL 6525601, at *29 (N.D. Ohio Dec. 4, 2019) ("Where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ 'has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record.'" (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997))). The Court concludes that this is sufficient evidence to support the ALJ's determination that the objective evidence is not "entirely consistent with the claimant's reports of the intensity, persistence and limiting effects of her migraines and pseudotumor cerebri syndrome and does not support further limitation" despite his misstatement about the frequency of Claimant's headaches. (ECF No. 11, PageID #: 120).

Moreover, the ALJ also concluded that beyond the objective medical evidence, Claimant's activities of daily living also revealed a higher level of physical functioning than she alleged. (ECF No. 11, PageID #: 121). He noted that Claimant helped care for her son, managed her personal care, prepared meals, grocery shopped, and managed money. (ECF No. 11, PageID #: 121). In addition, he relied on Claimant's testimony that she had been attempting to go back to school and applying for jobs since 2016. (ECF No. 11, PageID #: 121). The ALJ noted that Claimant stated that she had not gone back to school because of financial constraints not because of her physical impairments. (ECF No. 11, PageID #: 121). In addition, the ALJ pointed out that, at the time of the hearing, "[C]laimant indicated she was working 24 hours a week and had been since October 2019." (ECF No. 11, PageID #: 121). The ALJ reasoned that [t]hese activities are not consistent with the extent of limitation [Claimant] alleged." (ECF No. 11, PageID #: 121). *See Roth v. Colvin*, 3:15CV1974, 2017 WL 4511353, at *12 (N.D. Ohio Mar. 22, 2017) ("[I]t was not unreasonable for the ALJ to conclude that plaintiff's ability to maintain a wide range of activities indicated that

10

she retained a significant level of mobility and functionality . . . ."); *Hawk v. Astrue*, 4:11CV196, 2012 WL 3044291, at *6 (N.D. Ohio July 25, 2012) ("An ALJ may discount a claimant's credibility where the ALJ finds contradictions among the medical records, claimant's testimony, and other evidence." (citations omitted)). The Court is satisfied that, had the ALJ properly stated that Claimant had headaches once a week, he still would have concluded that the objective evidence and Claimant's daily activities did not support her allegations. Claimant's first assignment of error is, therefore, without merit.

**2. The ALJ's RFC Determination is Supported by Substantial Evidence**

Claimant next argues that the ALJ erred by not including limitations that reflect Claimant's headaches in his RFC determination. In particular, Claimant argues that "the frequency of [her] headaches, coupled with her need to lie down to relieve her headaches, suggests that she would either need additional breaks or would be absent or off-task too much to maintain competitive employment." (ECF No. 13-1 at 14). Claimant asserts that the ALJ's failure to include such limitations is reversible error because the VE testified that had the ALJ determined that Claimant needed four extra breaks in the day, would be off task 20% of the day, or would be absent from work two days a month, Claimant would be precluded from competitive work. The Commissioner responds that Claimant cannot establish the existence of disabling physical limitations merely by pointing to her diagnoses and symptoms and not objective medical evidence. Moreover, Commissioner argues that the ALJ expressly evaluated the limiting effects of Claimant's headaches and found that she could perform a range of sedentary to light work. The Court agrees.

A claimant's RFC is the most she can do despite her functional limitations. 20 C.F.R. § 404.1545(a)(1). The assessment must be based upon all the relevant evidence, including the medial records and opinions. *Id.* § 404.1545(a). The ALJ has the final responsibility for deciding the RFC.

*Id.* § 404.1546. As discussed above, the ALJ considered Claimant's allegations of pain and medical evidence. The ALJ, however, reasonably determined that the medical evidence did not substantiate Claimant's allegations and did not require any limitations not already included in his RFC. Claimant does not point to any medical opinion or objective medical evidence to support her argument that her headaches required additional limitations, simply relying on her subjective allegations. Thus, Claimant's "unsupported allegations are insufficient to show that the ALJ erred by omitting these limitations from her RFC." *Jones v. Comm'r of Soc. Sec.*, 2:20-cv-2316, 2021 WL 2643116, at *6 (S.D. Ohio June 28, 2021) (citations omitted); *see also Duncan v. Comm'r of Soc. Sec.*, No. 1:16-cv-1003, 2018 WL 1417327, at *3 (S.D. Ohio Mar. 22, 2018) ("Plaintiff has also failed to cite to medical evidence in the record which would support additional limitations in the RFC."). Accordingly, the Court concludes that Claimant's second assertion of error is without merit.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: January 21, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

_____

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530–31 (6th Cir. 2019)